# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re:<br><br>    HO WAN KWOK, *et al.*,<br><br>        Debtors. | Chapter 11<br><br>Case No. 22-50073 (JAM)<br><br>(Jointly Administered) |
| LUC A. DESPINS, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK,<br><br>        Plaintiff,<br><br>    v.<br><br>APPLE INC., HING CHI NGOK, ALEX HADJICHARALAMBOUS, CHUNGUANG HAN, and MEI GUO,<br><br>        Defendants. | Adv. P. No. 24-05060 (JAM)<br><br>Re: ECF Nos. 32, 70 |

## <u>APPEARANCES</u>

George Angelich
Eric Roman
Patrick Feeney
ArentFox Schiff LLP
1301 Avenue of Americas, 42nd Floor
New York, NY 10019

    and

Jin Yan (argued)
ArentFox Schiff LLP
1717 K St. NW
Washington, D.C. 20006

*Counsel for Defendant Apple Inc., Movant and Cross-Respondent*

Patrick R. Linsey (argued)
James C. Graham
Robert B. Flynn
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510

*Counsel for Plaintiff Mr. Luc A. Despins, in his capacity as Chapter 11 trustee for the estate of Mr. Ho Wan Kwok, Respondent and Cross-Movant*

## MEMORANDUM OF DECISION AND ORDER
## GRANTING MOTION TO AMEND COMPLAINT AND
## DENYING IN PART MOTION TO DISMISS AMENDED COMPLAINT

Julie A. Manning, United States Bankruptcy Judge

## I.      INTRODUCTION

Before the Court are (i) the motion to dismiss (the "Motion to Dismiss") filed by defendant Apple Inc. ("Apple") seeking dismissal of the claims in the complaint brought against Apple; and (ii) the cross-motion to amend the complaint (the "Motion to Amend") filed by plaintiff Mr. Luc A. Despins, in his capacity as Chapter 11 trustee (the "Trustee") for the bankruptcy estate of Mr. Ho Wan Kwok (the "Individual Debtor").  The complaint and the proposed amended complaint seek to avoid alleged actual fraudulent transfers, constructive fraudulent transfers, and unauthorized post-petition transfers and recover the value of the avoided transfers from Apple as the initial transferee.

This memorandum of decision sets forth the Court's findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052.  For the reasons set forth below, the Motion to Amend is **GRANTED** and the Motion to Dismiss is **DENIED IN PART** as applied to the amended complaint.[1]

---

[1] Certain issues implicated by the Motion to Dismiss are presently stayed.  (Avoidance Action Procedures Order ¶ 2(e)(2), Main Case ECF No. 3163.)  Hence, this Opinion does not resolve those issues.

## II.    BACKGROUND

On February 15, 2022, the Individual Debtor filed a voluntary Chapter 11 petition in this Court.  (Main Case ECF No. 1.)[2]  On June 15, 2022, presented with allegations related to the Individual Debtor's financial mismanagement and an alleged shell game involving numerous corporate *alter egos*, the Court entered a memorandum of decision and order appointing a Chapter 11 trustee to administer the Individual Debtor's bankruptcy estate.  (Main Case ECF No. 465.)  *In re Kwok*, 640 B.R. 514 (Bankr. D. Conn. 2022).  On July 8, 2022, Mr. Despins was appointed as the Trustee.  (Main Case ECF No. 523.)

### *The Complaint and Amended Complaint*

On February 10, 2024, the Trustee commenced this adversary proceeding.  (ECF No. 1.) The complaint and the proposed amended complaint allege six claims for relief.  (Complaint, ECF No. 1; Proposed Amended Complaint, ECF No. 70 Ex. 1.)  In pertinent part, five claims of relief are plead against Apple[3]:

> (i)    Pursuant to sections 548(a)(1)(A) and 550(a) of title 11 (the "Bankruptcy Code"), the first claim seeks (a) avoidance of actual fraudulent transfers by the Individual Debtor of his property to Apple through his *alter egos* or entities he beneficially owns and controls; and (b) recovery of the value thereof from Apple as initial transferee. (Complaint ¶¶ 49–52; Proposed Amended Complaint ¶¶ 54–57.)

> (ii)    Pursuant to, as applicable, former sections 276 and 278 of the New York Debtor and Creditor Law (the "NYDCL") or current sections 273(a)(1) and 276 of the NYDCL[4] and sections 544(b) and 550(a) of the Bankruptcy Code, the second claim seeks (a)

---

[2]  References to the docket in this adversary proceeding will be styled "ECF No. __". References to the docket in the main case, *In re Kwok*, Case No. 22-50073 (JAM), will be styled "Main Case ECF No. __".

[3]  The sixth claim seeks pursuant to section 550(a) of the Bankruptcy Code recovery of the actual fraudulent transfers, constructive fraudulent transfers, and unauthorized post-petition transfers alleged in the preceding claims from the other defendants as subsequent transferees.  (Complaint ¶¶ 76–79; Amended Complaint ¶¶ 83–86.)

[4]  Effective April 4, 2020, New York adopted the Uniform Voidable Transactions Act ("NYUVTA").  Formerly, New York had enacted the Uniform Fraudulent Conveyances Act ("NYUFCA").  NYUFCA remains applicable to claims arising before April 4, 2020.

avoidance of actual fraudulent transfers by the Individual Debtor of his property to Apple through his *alter egos* or entities he beneficially owns and controls; and (b) recovery of the value thereof from Apple as initial transferee. (Complaint ¶¶ 53–56; Proposed Amended Complaint ¶¶ 57–62.)[5]

(iii)    Pursuant to section 548(a)(1)(B) and 550(a) of the Bankruptcy Code, the third claim seeks (a) avoidance of constructive fraudulent transfers by the Individual Debtor of his property to Apple through his *alter egos* or entities he beneficially owns and controls; and (b) recovery of the value thereof from Apple as initial transferee. (Complaint ¶¶ 57–62; Proposed Amended Complaint ¶¶ 63–68.)

(iv)    Pursuant to, as applicable, former sections 273, 275, and 278 of the NYDCL or current sections 273(a)(2), 274, and 276 of the NYDCL and sections 544(b) and 550(a) of the Bankruptcy Code, the fourth claim seeks (a) avoidance of constructive fraudulent transfers by the Individual Debtor of his property to Apple through his *alter egos* or entities he beneficially owns and controls; and (b) recovery of the value thereof from Apple as initial transferee. (Complaint ¶¶ 63–68; Proposed Amended Complaint ¶¶ 68–75.)[6]

(v)    Pursuant to sections 549 and 550(a) of the Bankruptcy Code, the fifth claim seeks (a) avoidance of unauthorized post-petition transfers by the Individual Debtor of property of the estate to Apple through his *alter egos* or entities he beneficially owns and controls; and (b) recovery of the value thereof from Apple as initial transferee. (Complaint ¶¶ 69–75; Proposed Amended Complaint ¶¶ 76–82.)

The complaint alleges actual or constructive fraudulent transfers totaling $213,927.41 and unauthorized post-petition transfers totaling $65,232.84. The proposed amended complaint alleges additional actual or constructive fraudulent transfers and unauthorized post-petition transfers which additional transfers increase the totals to, respectively, $388,563.91 and $74,147.94.

The complaint alleges the Individual Debtor made avoidable transfers through his *alter egos* Greenwich Land, LLC ("Greenwich Land"), Golden Spring (New York) Limited ("Golden Spring"), HCHK Technologies, Inc. ("HCHK Technologies"), Lexington Property and Staffing,

---

[5]  The complaint contains typographical errors with respect to the NYDCL sections cited.
[6]  *See* n. 5, *supra*.

Inc. ("Lexington"), G Club Operations LLC ("G Club"), and G Fashion.[7]  The proposed

amended complaint alleges the Individual Debtor made avoidable transfers through additional

*alter egos*, namely, Saraca Media Group, Inc. ("Saraca"), G Fashion Media Group Inc. ("G

Fashion Media"), Hamilton Capital Holdings Limited ("Hamilton Capital"), Hamilton

Investment Management Limited ("Hamilton Investment"), Rule of Law Foundation III, Inc.

("ROLF"), Rule of Law Society IV, Inc. ("ROLS"), Fiesta Investment Ltd. ("Fiesta"), and GS

Security Solutions Inc. ("GS Security").

   The complaint and proposed amended complaint incorporate by reference other

complaints asserting the Trustee's *alter ego* or beneficial ownership allegations against these

entities.  In particular, the complaint incorporates by reference the following complaints:

> (i)     Complaint, *Despins v. Greenwich Land, LLC (In re Kwok)*, Case No. 22-50073
> (JAM), Adv. P. No. 23-05005 (JAM) (Bankr. D. Conn. March 27, 2023), ECF No. 1;

> (ii)    Complaint, *Despins v. Golden Spring (N.Y.) Ltd. (In re Kwok)*, Case No. 22-50073
> (JAM), Adv. P. No. 23-05018 (JAM) (Bankr. D. Conn. July 25, 2023), ECF No. 1;

> (iii)   Complaint, *Despins v. HCHK Techs., Inc.*, Case No. 22-50073 (JAM), Adv. P. No.
> 23-05013 (JAM) (Bankr. D. Conn. June 8, 2023), ECF No. 1; and

> (iv)    Complaint, *Despins v. ACA Cap. Grp. Ltd. (In re Kwok)*, Case No. 22-50073
> (JAM), Adv. P. No. 24-05249 (JAM) (Bankr. D. Conn. Feb. 15, 2024), ECF No. 1.

(Complaint ¶ 20 n. 4, ECF No. 1.)  The proposed amended complaint also incorporates by

reference the following complaint:

> (v)     Complaint, *Despins v. AA Glob. Ventures Ltd.*, Case No. 22-50073 (JAM), Adv. P.
> No. 24-05322 (JAM) (Bankr. D. Conn. Dec. 23, 2024).

---

[7] Apple believes "G Fashion" is G Fashion (CA).  However, it is unclear to the Court which G
Fashion is referenced in the original or the proposed amended complaint.  The Trustee has sued
numerous G Fashion entities.  (*See Despins v. ACA Cap. Grp. Ltd. (In re Kwok)*, Case No. 22-
50073 (JAM), Adv. P. No. 24-05249 (JAM) (Bankr. D. Conn. Feb. 15, 2024), ECF No. 1.)  For
the purposes of this Opinion, the Court will assume Apple is correct but the Trustee is instructed
to clarify this issue when he files the amended complaint.

(Proposed Amended Complaint ¶¶ 22–26, ECF No. 70 Ex. 1.)

The *alter ego* and beneficial ownership allegations in the incorporated complaints vary based on the alleged location of formation of the corporate entity.  The Trustee alleges both *alter ego* and beneficial ownership claims for each entity allegedly formed within the United States, namely, Greenwich Land, Golden Spring, HCHK Technologies, Lexington, G Club, and G Fashion, Saraca, G Fashion Media, ROLF, ROLS, and GS Security.[8]  The Trustee alleges only beneficial ownership claims with regard to Hamilton Capital, Hamilton Investment, and Fiesta, entities allegedly formed in jurisdictions within the Commonwealth of Nations.

### The Motion to Dismiss and Motion to Amend

On June 28, 2024, Apple filed the Motion to Dismiss.  (ECF No. 32.)  At the time Apple filed the Motion to Dismiss, it was subject to mandatory mediation procedures that included a stay of proceedings on the Motion to Dismiss (*see* ECF No. 25), from which procedures Apple moved for, and was granted, an exemption (ECF Nos. 38, 47).  On November 12, 2024, the Trustee filed an objection to the Motion to Dismiss.  (ECF No. 61.)  On December 16, 2024, Apple filed a reply in support of the Motion to Dismiss.  (ECF No. 64.)  The Motion to Dismiss is fully briefed.  A hearing on the Motion to dismiss was scheduled to be held on January 15, 2025.  Apple requested the hearing be continued and that request was granted.  (ECF Nos. 63, 66, 67.)

On February 14, 2025, before the continued hearing was held on the Motion to Dismiss, the Trustee filed the Motion to Amend.  (ECF No. 70.)  On March 7, 2025, Apple filed an

---

[8]  All these complaints except the complaint against Greenwich Land allege beneficial ownership of both the *alter ego* and its assets.  The complaint against Greenwich Land nevertheless contains allegations about the Individual Debtor's use and control of and benefit from Greenwich Land's assets.

objection to the Motion to Amend.  (ECF No. 72.)  On March 21, 2025, the Trustee filed a reply in support of the Motion to Amend.  (ECF No. 78.)  The Motion to Amend is fully briefed.

On April 29, 2025, a hearing was held on the Motion to Dismiss and the Motion to Amend.[9]  Litigation in this adversary proceeding involving whether G Club, G Fashion, Saraca, G Fashion Media, Hamilton Capital, Hamilton Investment, ROLF, and ROLS are the *alter egos* of, or beneficially owned by, the Individual Debtor is presently stayed.  (Avoidance Action Procedures Order ¶ 2(e)(2), Main Case ECF No. 3163.)  Otherwise, these matters are ripe for adjudication.

## III.    JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984.  The instant matters are statutorily core proceedings.  28 U.S.C. §§ 157(b)(2)(A), (E), (H).  The Court concludes its exercise of jurisdiction is not precluded by Constitutional concerns.  *Cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[9]  At the same time, a hearing was held on a similar motion to dismiss filed by Meta Platforms Inc. ("Meta") in the adversary proceeding styled *Despins v. Meta Platforms Inc. (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 24-05117 (JAM) (Bankr. D. Conn. Mar. 26, 2025). Apple and Meta advanced a joint argument during the hearing through the same counsel.  This Opinion is issued substantially contemporaneously with the Opinion regarding Meta's motion to dismiss and contains substantially similar contents.

## IV.    DISCUSSION

Apple requests the Court stay consideration of the Motion to Amend until it determines the Motion to Dismiss and until Apple's appeal of this Court's orders extending the deadline for the Trustee to file avoidance actions is resolved.  The Trustee argues the Court should first consider the Motion to Amend before ruling on the Motion to Dismiss.

The Court agrees with the Trustee.  Judicial economy supports consideration of the Motion to Amend before the Motion to Dismiss.  *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303–04 (2d Cir. 2020).  In *Pettaway*, the United States Court of Appeals for the Second Circuit noted that district courts within the Second Circuit have repeatedly explained when a plaintiff seeks to amend a complaint while a motion to dismiss is pending, a court has a variety of ways to deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.  The Second Circuit then stated:

> This is a sound approach that promotes judicial economy by obviating the need for multiple rounds of briefing addressing complaints that are legally insufficient.  We now adopt this rule and hold that when a plaintiff properly amends her complaint after a defendant has filed a motion to dismiss that is still pending, the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint.

*Id*.  Here, the Court concludes considering the Motion to Dismiss prior to the Motion to Amend would create a potential for duplicative litigation as Apple raises many of the same issues in its opposition to the Motion to Amend as it raised in the Motion to Dismiss.

Additionally, Apple has not attempted to meet its burden for a stay pending appeal of the extension orders.  *See Mohammed v. Reno*, 309 F.3d 95, 100–01 (2d Cir. 2002) (setting forth standard for stay pending appeal of district court or administrative agency decision); *In re Adelphia Commc'n Corp.*, 333 B.R. 649, 659 (S.D.N.Y. 2005) (same standard applies to a stay

pending appeal of a bankruptcy court decision as applies to a district court decision). A stay pending appeal is an "intrusion into the ordinary processes of administration and judicial review" and is not granted as a matter of course. *Nken v. Holder*, 556 U.S. 418, 427 (2009).

For these reasons, the Court will consider the Motion to Amend before turning to the Motion to Dismiss.

### A.    Motion to Amend

In pertinent part, Rule 15 provides "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2), *made applicable by* Fed. R. Bankr. P. 7015; *see Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. . . . If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). Leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party". *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021)). Absent any such reason, "the leave sought should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182.

The Trustee argues the Motion to Amend should be granted because he has acted diligently and in good faith, amendment of the complaint would not be futile, and amendment of the complaint would not cause undue prejudice to Apple. Apple argues amendment would be futile for the reasons stated in its Motion to Dismiss and because recovery on the additional transfers alleged in the proposed amended complaint is time-barred. Apple also argues it would

be prejudiced by amendment of the complaint because it would suffer increased discovery costs and the Trustee was not diligent in amending his complaint.

### 1.    Undue Prejudice

In determining undue prejudice, courts "consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

Regarding discovery, "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *United States ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*, 889 F.2d 1248, 1255 (2d Cir. 1989). Hence, "[a] court is more likely to find an amendment prejudicial if discovery has closed." *Scott v. Chipotle Mex. Grill, Inc.*, 300 F.R.D. 193, 200 (S.D.N.Y. 2014). In connection with an agreement between the Trustee and Apple, discovery has not even begun in this adversary proceeding. (ECF Nos. 57, 60, 62.) There will be no undue duplication or reopening of discovery in this adversary proceeding if the Trustee is allowed to file the amended complaint; no necessary discovery is rendered inaccessible by the delay. *Cf. McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007).

With respect to delay, "[m]ere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *First Blood*, 988 F.2d at 350 (quoting *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). Here, allowing the Trustee to amend the complaint will not cause undue delay and there is no discernable bad faith by the Trustee. The litigation is not at an advanced stage. Apple

has not filed an answer, discovery has not begun, no motions for summary judgment are pending, and no trial date has been scheduled.

Moreover, much of the delay in this adversary proceeding is attributable to Apple or occurred with Apple's consent. Apple sought, and was afforded by stipulation, extensions of time to respond to the complaint. Apple then sought to self-schedule the Motion to Dismiss without regard to the mediation stay. When Apple belatedly sought and obtained exemption from the mediation procedures, briefing occurred according to operative procedural orders. The Court scheduled a hearing shortly after the conclusion of briefing. Apple then sought and obtained a continuance of that hearing. By that time, the then-operative deadline to file avoidance actions was approaching and the Trustee filed the Motion to Amend in advance of that deadline.

When Apple chose not to be heard at the same time as other litigants who raised similar arguments as those raised in the Motion to Dismiss, the Court respected that choice. However, between the original hearing date and the continued hearing date on Apple's Motion to Dismiss, the Court determined more than fifty motions to dismiss in other avoidance actions commenced by the Trustee. Apple's Motion to Dismiss and the more than fifty other motions to dismiss were not the only matters pending before the Court in the more than three-hundred fifty adversary proceedings associated with these jointly administered Chapter 11 cases. The Court retains the authority to manage its docket so as to efficiently and expediently resolve the cases before it. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (collecting precedent supporting proposition district courts have inherent authority to manage their dockets). Apple's Motion to Dismiss was scheduled for a continued hearing at an appropriate time.

For these reasons, the Court concludes Apple would not be prejudiced by the filing of an amended complaint.

### 2.      Futility

Turning to futility, the Court will consider the parties' arguments as to the timeliness of the proposed amended claims.  Section 546(a) of the Bankruptcy Code provides "[a]n action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—(1) the later of—(A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or (2) the time the case is closed or dismissed."  11 U.S.C. § 546(a).  Section 549(d) of the Bankruptcy Code provides "[a]n action or proceeding under this section may not be commenced after the earlier of—(1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed."  11 U.S.C. § 549(d).

The Court has entered orders extending these deadlines through August 15, 2025, for the reasons stated therein.  (Main Case ECF Nos. 2921, 3417, 4004.)  Apple has appealed these determinations and argues the Trustee's amendments are untimely and do not relate back to the original claims.  The Trustee argues his amendments are timely under the Court's orders, he was diligent in bringing his amended claims under circumstances where he has had no cooperation from the Individual Debtor, and his claims relate back to the original claims.

The Court agrees with the Trustee.  As noted above, Apple has neither sought nor obtained a stay pending appeal of the Court's orders extending the time for the Trustee to file avoidance actions.  *See* Fed. R. Bankr. P. 7062, 8007.  Therefore, the Court's orders remain in full force and effect and the Trustee's proposed amendments to his claims are timely.

Nevertheless, the Court will consider the parties' arguments on (i) relation back and (ii) equitable tolling.[10]  As to relation back, amendments to claims relate back to the original claims when, in pertinent part, they "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading".  Fed. R. Civ. P. 15(c)(1)(B).  Claims arise out of the same conduct, transaction, or occurrence when there is a "common core of operative facts uniting the original and newly asserted claims."  *Mayle v. Felix*, 545 U.S. 644, 646 (2005).

In the fraudulent transfer context "[c]ourts hold the addition of new fraudulent transfers to a complaint 'relates back' if the fraudulent transfers arise from the same course of conduct as the original alleged fraudulent transfers."  *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 334 (S.D.N.Y. 2009).  On the one hand, courts have held additional fraudulent transfer claims relate back where, *inter alia*, the additional claims arise from the same series of contracts as the original claims, *Adelphia Recovery*, 624 F. Supp. 2d at 334, or the additional claims and original claims are part of an ongoing pattern of payments, *Burtch v. Dent (In re Circle Y of Yoakum, Tex.)*, 354 B.R. 349, 357–58 (Bankr. D. Del. 2006); *Brandt v. Gerardo (In re Gerardo Leasing, Inc.)*, 173 B.R. 379, 390 (Bankr. N.D. Ill. 1994).  On the other hand, courts have held additional fraudulent transfer claims do not relate back where there is no stated connection between the new claims and the original claims other than their nature as fraudulent transfers and, indeed, any allegation that there is a unifying course of conduct is withdrawn in the proposed amended complaint.  *Metzeler v. Bouchard Transp. Co., Inc. (In re Metzeler)*, 66 B.R. 977, 983–84 (Bankr. S.D.N.Y. 1986); *accord Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 210–11 (Bankr. S.D.N.Y. 2018).

---

[10]  The parties do not directly raise equitable tolling but nevertheless argue its elements. Accordingly, the Court considers equitable tolling.

Here, while there is not a series of related contracts or a discernable pattern of payments, *see Adelphia Recovery*, 624 F. Supp. 2d at 334; *Circle Y*, 354 B.R. at 357–58; *Gerardo Leasing*, 173 B.R. at 390, the Trustee has alleged for some time in the Individual Debtor's case that through an existing and ongoing "shell game," the Individual Debtor used various corporate *alter egos* he beneficially owns to pay the expenses of himself, his immediate family, and his close associates, fund his business endeavors, and shelter his assets from collection by his creditors, *cf. Metzeler*, 66 B.R. at 983–84.  In the complaint and the proposed amended complaint, the Trustee alleges both the original *and* additional fraudulent transfers and unauthorized post-petition transfers at issue in this adversary proceeding occurred as part of this ongoing conduct. Moreover, except for Fiesta and GS Security, Apple was on notice of the Trustee's *alter ego* and beneficial ownership allegations regarding each of the entities utilized in the additional alleged fraudulent or unauthorized post-petition transfers in the proposed amended complaint. (Complaint ¶ 20 n. 4, ECF No. 1; *see, generally*, Complaint, *Despins v. ACA Cap. Grp. Ltd. (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 24-05249 (JAM) (Bankr. D. Conn. Feb. 15, 2024), ECF No. 1.)  Under the specific facts and circumstances of this case, the Court concludes the additional claims relate back to the original claims because they share a common core of operative facts with the original claims and a common course of conduct—the Individual Debtor's alleged "shell game".  Accordingly, the Trustee's additional claims are timely even assuming *arguendo* the Court had not extended the Trustee's time to file avoidance claims.

Turning to equitable tolling, sections 546(a) and 549(d) contain statutes of limitation subject to equitable tolling because they contain no tolling provisions that supplant traditional principles of equity.  *Compare Young v. United States*, 535 U.S. 43, 52–53 (2002) *with Arellano v. McDonough*, 598 U.S. 1, 12–14 (2023).  Hence, "[w]here, despite the exercise of due

diligence, a trustee fails to timely bring an avoidance action due to fraud or extraordinary circumstances beyond the trustee's control, equitable tolling prevents the expiration of § 546(a)'s limitations period."  *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 700 (11th Cir. 2005); *see Clark v. Hanley*, 89 F.4th 78, 92 (2d Cir. 2023) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way.") (alterations in original).

Moreover, as the United States Bankruptcy Court for the District of Minnesota stated:

> A bankruptcy case presents a rather different slant on equitable tolling.  In the typical situation, it is the debtor's conduct rather than the defendant's conduct which invokes equitable tolling.  In some senses, this is unfair to the defendant.  On the other hand, unlike the usual civil case where a plaintiff at least has the advantage of being a party to the underlying transaction, a bankruptcy trustee must rely almost entirely on a third party (the debtor) to provide the information necessary to uncover avoidable transfers.

*Moratzka v. Pomaville (In re Pomaville)*, 190 B.R. 632, 637 (Bankr. D. Minn. 1995) (denying summary judgment because there remained a genuine issue of material fact as to whether the statute of limitations could be equitably tolled); *see also Gladstone v. U.S. Bancorp*, 811 F.3d 1133, 1143 (9th Cir. 2016) (citing *Olsen v. Zerbetz (In re Olsen)*, 36 F.3d 71, 72–73 (9th Cir. 1994) and holding that concealment by the debtor rather than the defendant could support equitable tolling).

In support of their arguments for and against equitable tolling, both parties cite to the evidentiary hearings held on the motions to extend time to file avoidance actions, at which hearings the Trustee testified and was subject to cross-examination by, among others, Apple.  As noted by the Court in the first order granting an extension of time to file avoidance actions:

> Instead of receiving compliance and cooperation from the Individual Debtor, the Trustee has faced ceaseless recalcitrance, obstruction, and flagrant disregard of court orders by the Individual Debtor, his family members, his associates and employees, and

15

entities the Trustee alleges he controls since the Trustee's appointment.  (*See, e.g.*, ECF Nos. 913, 1046, 1303, 1345, 1362, 1397, 1453, 1521, 1537, 1546, 1709, 1805, 1892, 1896, 2009, 2035, 2036, 2080, 2093, 2342, 2396; *Pac. All. Asia Opportunity Fund L.P. v. Kwok (In re Kwok)*, No. 22-50073 (JAM), Adv. P. No. 22-05032 (JAM) (Bankr. D. Conn. Jan. 13, 2023), ECF No. 133; *Despins ex rel. Kwok v. Mei Guo (In re Kwok)*, No. 22-50073 (JAM), Adv. P. No. 23-05008 (JAM) (Bankr. D. Conn. Oct. 18, 2023), ECF No. 32; *Guo*, No. 22-50073 (JAM), Adv. P. No. 23-05008 (JAM) (Bankr. D. Conn. Nov. 7, 2023), ECF No. 46.)  Ultimately, the Court has entered at least eight orders holding the Individual Debtor, his daughter, Ms. Guo, and entities allegedly controlled by the Individual Debtor in contempt for failure to turn over assets and discovery abuse. (ECF Nos. 1372, 1537, 1709, 1892, 1896, 2009, 2035, 2093.)  To date, each contemnor remains in contempt of court.  The severity of nonperformance of statutory duties, *see* 11 U.S.C. §§ 521(a)(3), (4), and noncompliance with this Court's orders in these jointly administered Chapter 11 cases, is extraordinary.

Faced with these circumstances, the Trustee has had to seek extensive and ongoing third party discovery in addition to his efforts to obtain discovery from the Individual Debtor, his family, his associates, and entities he allegedly controls.  (ECF Nos. 636–38, 839, 1116, 1259, 1592, 1789, 2079, 2249, 2304, 2308, 2434, 2508, 2514.) The Court has granted all fifteen of the Trustee's motions for Rule 2004 examinations, authorizing the examination of hundreds of entities.  (ECF Nos. 756–58, 866, 1184, 1339, 1646, 1891, 2210, 2281, 2393, 2394, 2474, 2534, 2537.)  The Court credits the Trustee's testimony that attempting to piece together the Individual Debtor's financial affairs from cold bank records and other documents evidencing a massive web of entities, bank accounts, and money transfers across multiple countries, continents, and jurisdictions is a time-consuming and difficult endeavor over an ever-increasing data set of unknown ultimate dimensions.  This testimony is particularly credible because the Trustee is operating without the Individual Debtor's statutorily required cooperation.  Moreover, the Trustee's investigation has been and continues to be impeded by the active obstruction of the Individual Debtor, his family members, associates, employees, followers, and associated entities.  The "puzzle" the Trustee is faced with in these jointly administered Chapter 11 cases is particularly severe and the facts of these cases are similar to the facts of *IBT International*, which also involved allegations of a complex asset diversion plan, where there was a "jigsaw puzzle of transfers."  408 F.3d at 702.

(Memorandum of Decision at 14–16, *In re Kwok*, Case No. 22-50073 (JAM), 2024 WL 666646, at *6 (Bankr. D. Conn. Feb. 15, 2024), Main Case ECF No. 2921.)

Since the entry of the first extension order, none of the referenced contempt has been purged and the Trustee's discovery efforts have continued.  Apple's arguments that the Trustee has not been diligent is unpersuasive.  The Trustee is managing hundreds of adversary proceedings and extensive discovery obtained through ongoing Rule 2004 examinations.  The

Court concludes under the specific facts and circumstances of the record of the hearings on extending the time to file avoidance actions, the record of this adversary proceeding, and the record of these jointly administered Chapter 11 cases that, in the alternative to its rulings above, equitable tolling is appropriate.

Accordingly, for all these reasons, the Court determines the additional claims in the proposed amended complaint are timely filed.

* * *

Because: (i) the Court has determined the amended complaint would not unduly delay this adversary proceeding or otherwise unduly prejudice Apple; (ii) the Court has determined the Trustee's additional claims are timely; (iii) Apple's additional arguments for futility are those raised in the Motion to Dismiss; and (iv) the Trustee consents to the application of the Motion to Dismiss to the proposed amended complaint, the Court grants the Motion to Amend and will consider the Motion to Dismiss in light of the amended complaint. *Pettaway*, 955 F.3d at 303–04.

### B.    Motion to Dismiss

In the Motion to Dismiss, Apple argues the first through fifth claims pled against Apple fail to state a claim for relief. Apple argues (i) the Trustee lacks standing to assert his claims on behalf of non-debtor transferors; (ii) regarding actual fraudulent transfers, the Trustee has failed to plead the Individual Debtor's fraudulent intent with particularity; (iii) regarding constructive fraudulent transfers, the Trustee failed to plausibly plead the Individual Debtor's insolvency at the time of the transfers and receipt of less than reasonably equivalent value in consideration for the transfers; and (iv) the Trustee has failed to put Apple on notice of the claims against it because he filed the transfer information in a sealed schedule. In response, the Trustee argues he

has not asserted claims on behalf of non-debtor transferors; has sufficiently pled the Individual

Debtor's fraudulent intent, insolvency, and receipt of less than reasonably equivalent value; and

has filed the transfer information under seal pursuant to applicable orders of the Court and would

not oppose a motion to unseal the schedule on notice to the parties who produced the information

to the Trustee.

### 1.    Legal Standard

In determining whether the Trustee states claims upon which relief may be granted, *see*

Fed. R. Civ. P. 12(b)(6), *made applicable by* Fed. R. Bankr. P. 7012(b), the Court must take the

well-pled allegations in the amended complaint as true, *see Hughes v. Rowe*, 449 U.S. 5, 10

(1980); *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 208 (2d Cir. 2012); *Chambers v. Time*

*Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Tatum v. Oberg*, 650 F. Supp. 2d 185, 189 (D.

Conn. 2009).  In addition to the allegations in the amended complaint, the Court must consider

documents incorporated by reference and matters of which it may take judicial notice.  *Tellabs,*

*Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The Court must draw all

reasonable inferences in the Trustee's favor.  *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014).

Generally, to be well-pled, the Trustee's allegations must contain "a short and plain

statement showing the pleader is entitled to relief".  Fed. R. Civ. P. 8(a), *made applicable by* Fed.

R. Bankr. P. 7008.  The allegations must contain "sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face'".  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The "plausibility standard", while

not a "probability requirement", requires more than a "sheer possibility that a defendant has

acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Determining the

plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

A heightened pleading standard applies to the fraudulent intent element of an actual fraudulent transfer under either the Bankruptcy Code or New York law, which must be pled with particularity.[11]  Fed. R. Civ. P. 9(b), *made applicable in this adversary proceeding by* Fed. R. Bankr. P. 7009; *see* 11 U.S.C. § 548(a)(1)(A); NYUVTA, N.Y. Debt. & Cred. Law § 273(a)(1) (effective April 4, 2020); NYUFCA, N.Y. Debt. & Cred. Law § 276 (effective as to claims arising prior to April 4, 2020); *Kirschner v. Large S'holders (In re Trib. Co. Fraudulent Conv. Litig.)*, 10 F.4th 147, 159–60 (2d Cir. 2021) (Rule 9(b) applies to allegations of fraudulent intent required to plead actual fraudulent transfer under the Bankruptcy Code); *Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005) (same under New York law).  However, "[w]hen a trustee in bankruptcy pleads a claim of fraud, cases have held that the Rule 9(b) requirement of particularity is relaxed."  *Geron v. Reifer (In re Eight-115 Assocs., LLC)*, 650 B.R. 43, 56 (Bankr. D. Conn. 2023) (quoting *Bankr. Est. of Norske Skogindustrier ASA v. Cyrus Cap. Partners, L.P. (In re Bankr. Est. of Norske Skogindustrier ASA)*, 633 B.R. 640, 655 (Bankr. S.D.N.Y. 2021)) (alteration in original); *see also* 10 Collier On Bankruptcy ¶ 7009.03 (16th ed. 2025) (collecting cases).

---

[11]  However, this heightened pleading standard does not apply to any element of a constructive fraudulent transfer under either the Bankruptcy Code or New York law.  *Mangan v. People's United Bank, N.A. (In re Integrity Graphics, Inc.)*, 623 B.R. 21, 28 (Bankr. D. Conn. 2020); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Secs. LLC)*, 454 B.R. 317, 332 (Bankr. S.D.N.Y. 2011); *Wahoski v. Classic Packaging Co. (In re Pillowtex Corp.)*, 427 B.R. 301, 310 (Bankr. D. Del. 2010); *see Trib. Co.*, 10 F.4th at 159–60 (comparing elements of actual fraudulent transfer to constructive fraudulent transfer while determining Rule 9(b) applies to actual fraudulent transfers).  Similarly, unauthorized post-petition transfer does not include actual fraudulent intent as an element.  11 U.S.C. § 549.

2. **Statutory Standing**

The Court turns first to Apple's argument on statutory standing.  During the hearing, Apple rested on its papers with respect to its standing argument, acknowledging the Court's adverse rulings in other adversary proceedings.  *See, e.g.*, Memorandum of Decision, *Kwok v. Agora Lab, Inc. (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 24-05005 (JAM), 2025 WL 699666 (Bankr. D. Conn. Mar. 4, 2025) (omnibus memorandum of decision denying or denying in part several motions to dismiss).[12]  In response, the Trustee also rested on his papers and incorporated the Court's rationale in its prior decisions into his argument.

In its papers, Apple argues applicable *alter ego* law does not create an identity between the Individual Debtor and the alleged *alter egos* involved in the transfers the Trustee seeks to avoid.  Without such an identity, Apple argues the Trustee lacks standing under sections 544(b), 548(a)(1), and 549(a) of the Bankruptcy Code to avoid a fraudulent or unauthorized post-petition transfer by non-debtor entities.  Apple asserts the Trustee would only have standing if he were to obtain *nunc pro tunc* substantive consolidation of the alleged *alter egos'* bankruptcy estates and the Individual Debtor's bankruptcy estate.  However, Apple contends *nunc pro tunc* relief would be inappropriate on the present facts.

The Trustee asserts he is not seeking to avoid transfers on behalf of the alleged *alter egos'* bankruptcy estates but rather on behalf of the Individual Debtor's bankruptcy estate.  The Trustee alleges the Individual Debtor made the transfers at issue utilizing entities he beneficially

---

[12]  While the Court agrees with Apple that "a lot of ink has been spilled", the Court's previous decision was issued in a complex, omnibus procedural posture and is organized accordingly. Although much of the following text appears in the prior decision, its organization is adjusted to meet the present circumstances.  In doing so, the Court does not depart from any of its conclusions reached in the prior decision and incorporates its reasoning by reference.

owns or which are his *alter egos*. Although substantive consolidation may work a similar remedy, the Trustee argues his claims are different and he does not require *nunc pro tunc* relief.

The Court agrees with the Trustee. The Trustee alleges in the amended complaint the Individual Debtor transferred his assets through nominal transferors he beneficially owns or which are his *alter egos*. The Trustee alleges the Individual Debtor is the transferor:

> 2. The Debtor, through his alter ego shell companies, G Fashion ("G Fashion"), HCHK Technologies Inc. ("HCHK"), Lexington Property and Staffing Inc. ("Lexington"), G Club Operations LLC ("G Club"), Greenwich Land, LLC ("Greenwich Land"), Golden Spring (New York) Limited ("Golden Spring"), Saraca Media Group, Inc. ("Saraca"), G Fashion Media Group Inc. ("G Fashion Media"), Hamilton Capital Holdings Limited ("Hamilton"), Fiesta Investment Ltd. ("Fiesta"), and Rule of Law Foundation III, Inc. ("Rule of Law Foundation"), transferred funds in the aggregate amount of $388,563.91 prior to the Petition Date (as defined herein) to and/or for the benefit of Apple as initial transferee. . . .

> 4. Following the Petition Date, the Debtor, through his alter ego shell companies, G Club, Greenwich Land, Golden Spring, Rule of Law Foundation, Rule of Law Society IV, Inc. ("Rule of Law Society"), GS Security Solutions Inc. ("GS Security") and Hamilton Investment Management Limited ("Hamilton Investment" and collectively with G Club, Greenwich Land, HCHK, Golden Spring, Rule of Law Foundation, Rule of Law Society, GS Security, G Fashion, G Fashion Media, Saraca, Hamilton, Fiesta and Lexington, sometimes referred to herein as the "Relevant Alter Egos") transferred funds in the aggregate amount of $74,147.94 to and/or for the benefit of Apple as initial transferee.

(Proposed Amended Complaint ¶¶ 2, 4.) Similarly, the Trustee alleges the transferred property was, as applicable, the Individual Debtor's property or property of the estate:

> 36. The property of the Debtor's alter egos, including the Relevant Alter Egos, was at all times prior to the Petition Date property of the Debtor. . . .

> 38. As of the Petition Date, all of the Debtor's property held through his alter egos, including the Relevant Alter Egos, became property of the chapter 11 estate. *See* 11 U.S.C. § 541(a)(1).

(Proposed Amended Complaint ¶¶ 36, 38.)

While Apple contends the Trustee has engaged in artful drafting, the Court must consider the transfers the Trustee alleges. *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366,

21

382 (2018).  It bears repeating that this comes before the Court *on a motion to dismiss*, in which

context the Court must take the well-pled allegations in the amended complaint as true and draw

all inferences in the Trustee's favor.  *Hughes*, 449 U.S. at 10; *Warren*, 744 F.3d at 843.  Simply

put, the matter before the Court is whether the Trustee has stated a claim for relief regarding the

transfers he alleges – not those Apple wishes he alleged.  The Court must determine whether,

assuming the Trustee's well-pled allegations of *alter ego* or beneficial ownership in the

incorporated complaints against the alleged shell companies are true,[13] those claims support the

conclusion that the Trustee has plausibly pled the Individual Debtor transferred his property.  In

assessing the alleged transfers, binding precedent requires the Court to look past the formal

---

[13]  Apple does not contest that these incorporated allegations state *alter ego* or beneficial
ownership claims.  The issue of whether Greenwich Land, Golden Spring, HCHK Technologies,
Lexington, and GS Security are *alter egos* of, or beneficially owned by, the Individual Debtor is
not presently stayed.  Similarly, the issue of whether Fiesta is beneficially owned by the
Individual Debtor is presently not stayed.  However, whether G Club, G Fashion, Saraca, G
Fashion Media, Hamilton Capital, Hamilton Investment, ROLF, and ROLS are the *alter egos* of,
or beneficially owned by, the Individual Debtor is presently stayed.  (Avoidance Action
Procedures Order ¶ 2(e)(2), Main Case ECF No. 3163.)  Regarding the issues that are not stayed,
the Court concludes (i) Delaware law applies to these issues with respect to Greenwich Land,
Golden Spring, HCHK Technologies, and Lexington because they are alleged to be Delaware
entities; (ii) New York law applies to GS Security, which is a New York entity; and (iii) English
law applies to Fiesta, which is a United Kingdom entity.  *Geron v. Seyfarth Shaw LLP (In re
Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013) (forum state choice of law applies); *see Weber v.
U.S. Sterling Secs., Inc.*, 924 A.2d 816, 822–23 (Conn. 2007) (applying local law of state of
formation to *alter ego* action and other internal affairs regarding an LLC); Restatement
(Second) of Conflict of Laws §§ 6, 303, 304.  Delaware and New York recognize reverse
veil-piercing *alter ego* claims brought on behalf of creditors.  *Am. Fuel Corp. v. Utah Energy
Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997) (applying New York law) (citing *State v.
Easton*, 647 N.Y.S.2d 904, 908 (N.Y. Sup. Ct. 1995)); *Manichaean Cap., LLC v. Exela Techs.,
Inc.*, 251 A.3d 694, 710 (Del. Ch. 2021).  Delaware, New York, and England recognize
beneficial ownership.  *See, e.g.*, Prest v. Petrodel Res. Ltd. [2013] UKSC 34 (appeal taken from
EWCA); *Hudak v. Procek*, 806 A.2d 140 (Del. 2002); *Exp.-Imp. Bank of United States v. Asia
Pulp & Paper Co., Ltd.*, 609 F.3d 111, 120 (2d Cir. 2010) (applying New York law) (citing
*United States v. Coluccio*, 51 F.3d 337, 341 (2d Cir. 1995) (applying New York law)).  Upon a
review of the incorporated complaints, the Court concludes for the purposes of the present
Opinion that the relevant *alter ego* and beneficial ownership allegations state claims for relief.

structure of a transaction to its economic reality. *Orr v. Kinderhill Corp.*, 991 F.2d 31, 36 (2d Cir. 1993) (citing *Salomon Inc. v. United States*, 976 F.2d 837, 842 (2d Cir. 1992)).

Outside of bankruptcy, the Trustee's claims could clearly be brought.[14] Under NYUVTA, actual and constructive fraudulent transfers can be established by an *alter ego's* transfer of its property. "'Debtor' means a person that is liable on a claim." N.Y. DEBT. & CRED. LAW § 270(f) (effective April 4, 2020). Therefore, even assuming *arguendo alter ego* only creates vicarious *liability*, an *alter ego* is a "debtor" even if it is not a debtor under the Bankruptcy Code. Because it is a debtor, an *alter ego* can make an avoidable transfer. *See* N.Y. DEBT. & CRED. LAW §§ 273, 274 (effective April 4, 2020). Moreover, property of an *alter ego* is property of a debtor. N.Y. DEBT. & CRED. LAW §§ 270(b), (l), (p) (effective April 4, 2020). Therefore, in a state law action, *alter ego* can be used in conjunction with NYUVTA. *See Bravia Cap. H.K. Ltd. v. SL Green Realty Corp.*, No. 24-cv-2296 (JGK), 2025 WL 552046, at *9 (S.D.N.Y. Feb. 18, 2025) (applying NYUVTA and Delaware *alter ego* law). Similarly, "[p]roperty" is defined as "anything that may be the subject of ownership", which is certainly capacious enough to include beneficial or equitable interests. N.Y. DEBT. & CRED. LAW §§ 270(b), (l) (effective April 4, 2020). Hence, beneficial ownership may also be utilized in a NYUVTA action.

Under NYUFCA, assets are defined to include all property that is liable for any debts of the debtor. N.Y. DEBT. & CRED. LAW § 270 (effective as to claims arising prior to April 4, 2020). The property of an *alter ego* of a judgment debtor is liable for the debts of the judgment debtor and, hence, transfers of such property may be avoided under NYUFCA. *JSC Foreign Ass'n*

---

[14] Section 544(b) states "the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim . . . ." Hence, the Bankruptcy Code imposes additional elements when a trustee brings a state law fraudulent transfer claim. Relevant to the instant Opinion, section 544(b) requires the transfer to have been "of an interest of the debtor in property". This element will be discussed below.

*Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 379–80 (S.D.N.Y. 2003). Beneficial ownership may also be asserted to hold property liable for the debts of a judgment debtor. *See, e.g.*, *In re Gliklad v. Chernoi*, 12 N.Y.S.3d 65 (N.Y. App. Div. 2015) (affirming order requiring judgment debtor to turn over beneficial ownership of a business); *Guilder v. Corinth Constr. Corp.*, 651 N.Y.S.2d 706 (N.Y. App. Div. 1997) (remanding case to determine whether individual defendants equitably owned a corporate defendant and whether the plaintiff could pierce the corporate veil between the corporate defendant and its potential equitable owners); *Pac. All. Asia Opportunity Fund L.P. v. Kwok Ho Wan*, Index No. 652077/2017, 2022 WL 406636 (N.Y. Sup. Ct. Feb. 9, 2022) (determining judgment debtor beneficially owned yacht in action to collect on judgment); *see also Paloian ex rel. Dordevic v. Dordevic (In re Dordevic)*, 633 B.R. 553, 558 (Bankr. N.D. Ill. 2021) (applying federal common law in absence of articulated state law standard), *aff'd by* 67 F.4th 372 (7th Cir. 2023). Therefore, as with NYUVTA, both *alter ego* and beneficial ownership may be pled as part of a NYUFCA action.

Accordingly, the question is whether the Bankruptcy Code allows the Trustee to use *alter ego* and beneficial ownership allegations to assert the Individual Debtor transferred his property. The question is in turn divided into (i) whether under the Bankruptcy Code *alter ego* or beneficial ownership allegations may be used to assert the Individual Debtor is the Transferor; and (ii) whether under the Bankruptcy Code *alter ego* or beneficial ownership allegations may be used to assert the transferred property is, or would have been but for the transfer, property of the estate.

### i.   Does the amended complaint plausibly plead the Individual Debtor is the transferor?

To plead actual fraudulent transfer under the Bankruptcy Code, a trustee must plead the debtor made the transfer at issue.  11 U.S.C. § 548(a)(1)(A).  The Bankruptcy Code does not require a trustee plead the debtor was the transferor to bring state law claims, including actual or constructive fraudulent transfer claims; three of the four types of constructive fraudulent transfer claims under the Bankruptcy Code, including those at issue here; or unauthorized post-petition transfer claims.  11 U.S.C. §§ 544(b), 548(a)(1)(B)(i), (ii)(I)–(III)[15], 549(a).  This is not an accident of drafting.  For example, the unauthorized post-petition fixing of a lien by a creditor without any action by the bankruptcy debtor is an unauthorized post-petition transfer.  *See* 11 U.S.C. §§ 101(54); 549(a).  Hence, the following discussion only impacts the Bankruptcy Code actual fraudulent transfer claim—the first claim of the amended complaint.

The Court concludes a debtor may use an *alter ego* as a "mode, direct or indirect, . . . of parting with—(i) property; or (ii) an interest in property."  11 U.S.C. § 101(54)(D).  The United States Court of Appeals for the Second Circuit has ruled that *alter ego* may be used to assert a party is the actual transferor in a fraudulent transfer action brought under the former Bankruptcy Act.  In *McNellis v. Raymond*, the Second Circuit affirmed the district court both (a) in piercing the corporate veil and holding the individual rather than his corporation took out a loan he personally repaid; and (b) in refusing to pierce the same corporate veil and holding said loan was not usurious because it was made to the individual's corporation – not him.  420 F.2d 51, 53–54 (2d Cir. 1970).  The Second Circuit concluded, while fraudulent conveyance law allowed courts

---

[15]  The Trustee does not appear to allege transfers to or for the benefit of an insider under an employment contract outside the ordinary course of business.  11 U.S.C. § 548(a)(1)(B)(ii)(IV).

to pierce form in favor of substance, New York's usury law had developed to allow individuals to use a corporate *alter ego* to take out an otherwise usurious loan. *McNellis*, 420 F.2d at 53–54.

*McNellis* remains binding law. Courts "do not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure". *Cohen v. de la Cruz*, 523 U.S. 213, 221 (1998). In interpreting the Code, courts presume Congress's "familiarity with the prevailing understanding" of the former Bankruptcy Act. *Johnson v. Home State Bank*, 501 U.S. 78, 86 (1991). There is no clear indication that Congress intended to overrule *McNellis*. *Compare* 11 U.S.C. §§ 101(54), 541(a), 544(b), 548(a), 549(a) *with* 11 U.S.C. §§ 1(30) (former Bankruptcy Act of 1898, section 1) (repealed 1978), 107(d) (former Bankruptcy Act of 1898, section 67) (repealed 1978), 110(a), (d), (e) (former Bankruptcy Act of 1898, section 70) (repealed 1978).

Similarly, the Court concludes a debtor may use an entity it beneficially owns or controls to indirectly transfer property. 11 U.S.C. § 101(54)(D). Insofar as the Individual Debtor beneficially owns the alleged shell companies, such entities are his affiliates through which he can indirectly transfer assets. 11 U.S.C. §§ 101(2), (15), (41). Courts have collapsed transactions involving affiliates. *See, e.g.*, *Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d 206, 208–210, 212–13 (3d Cir. 1990) (affirming district court where fraudulent transfer involved owners laundering the assets of one company they owned to another as part of an overall scheme to make assets unavailable to creditors).

ii.   **Does the amended complaint plausibly plead the transferred property was property of the Individual Debtor or the estate?**

The Bankruptcy Code requires a trustee's state law actual or constructive fraudulent transfer claims, Bankruptcy Code actual or constructive fraudulent transfer claims, and unauthorized post-petition transfers, involve a transfer of either (a) property of the estate or (b)

26

an interest of the debtor in property. 11 U.S.C. §§ 544(b), 548(a)(1), 549(a). An interest of the debtor in property is property that, but for the transfer to be avoided, would be property of the estate. *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 59 (1990) (defining property of the debtor with respect to preferential transfers). Hence, whether property of an *alter ego* or beneficially owned property is property of the estate is the touchstone of the present analysis.

Where the Bankruptcy Code is silent, state law determines what interests parties have in property. *Butner v. United States*, 440 U.S. 48, 54–57 (1979). However, *Butner* also holds Congress has authority under Article I, section 8, clause 4 of the Constitution to define property interests contrary to state law for the purposes of bankruptcy. *Butner*, 440 U.S. at 54–57 (holding it is a matter of state law whether, when, and how a mortgagee obtains a security interest in rents because the former Bankruptcy Act of 1898, as amended, did not include a provision providing or denying mortgagees such a security interest).

Congress defined property of the estate. 11 U.S.C. § 541. "Congress intended a broad range of property to be included in the estate", including "property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced." *United States v. Whiting Pools*, 462 U.S. 198, 204–05 (1983) (affirming Second Circuit determination that property of the estate included property seized by the Internal Revenue Service to enforce a tax lien prior to the filing of the bankruptcy petition). Therefore, consistent with *Butner* and *Whiting Pools*, courts have generally held that while state law determines what interests a debtor has in property, federal law determines whether those interests in property are included in property of the estate. *Lowe v. Bowers (In re Nicole Gas Prod., Ltd.)*, 916 F.3d 566, 573 (6th Cir. 2019); *Abboud v. Ground Round, Inc. (In re The Ground Round, Inc.)*, 482 F.3d 15, 17 (1st Cir. 2007);

*In re Nejberger*, 934 F.2d 1300, 1302 (3d Cir. 1991); *N.S. Garrott & Sons v. Union Planters Nat'l Bank of Memphis (In re N.S. Garrott & Sons)*, 772 F.2d 462, 466 (8th Cir. 1985).

The Trustee may seek to avoid transfers of property the Individual Debtor beneficially owned at the time of the transfer.  By definition, property of the estate includes property a debtor beneficially owns.  The estate is, among other things, "comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case", "wherever located and by whomever held".  11 U.S.C. § 541(a).

The Court concludes the Trustee may also seek to avoid transfers of property nominally owned by the Individual Debtor's *alter egos*.  An *alter ego* claim is property of the estate. *Stadtmauer v. Tulis (In re Nordlicht)*, 115 F.4th 90, 104–06 (2d Cir. 2024) (holding *alter ego* claim under New York law is property of the estate).  This is true as a matter of federal bankruptcy law even if at state law *alter ego* is a claim for the imposition of vicarious liability, not an independent cause of action.  *Nordlicht*, 115 F.4th at 109–111.  *Nordlicht* determined that

> alter-ego theories of liability neatly fall[] within the Bankruptcy Code's definition of 'claim':
>
> (A)      *right to payment*, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B)      *right to an equitable remedy* for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

115 F.4th at 110 (emphasis in original).  *Nordlicht* is in accord with the plain text of the Bankruptcy Code: a trustee in bankruptcy is deemed to be a judgment creditor – *to have already succeeded on a deemed companion claim*.  11 U.S.C. § 544(a).

*Alter ego* claims are property of the estate because they "'inure[] to the benefit of all creditors' by enlarging the estate", *Nordlicht*, 115 F.4th at 105 (alteration in original); *see In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014) (holding that successor liability claims are property of the estate because, like *alter ego* claims, they are general claims of creditors).  A trustee may recover on *alter ego* claims to the full extent of claims asserted against the estate.  *See Moore v. Bay (In re Est. of Sassard & Kimball, Inc.)*, 284 U.S. 4, 5 (1931) (holding, with respect to predecessors of section 544(b) claims, the trustee could recover on an avoided transfer for the estate's creditors at large).

Property recoverable by a trustee under provisions of the Bankruptcy Code is property of the estate.  *Whiting Pools*, 462 U.S. at 204–07.  Because a bankruptcy trustee can bring an *alter ego* claim, the property of an *alter ego* of a debtor is property of the estate and the Individual Debtor had an interest in that property pre-petition.  *See Nordlicht*, 115 F.4th at 105 (*alter ego* claims "'inure[] to the benefit of all creditors' by enlarging the estate"); *718 Arch St. Assocs., Ltd. v. Blatstein (In re Blatstein)*, 192 F.3d 88, 95 (3d Cir. 1999) (holding court had jurisdiction to determine appeal of a ruling on, among other things, creditor's claim that certain corporations were *alter egos* of the debtor because a determination that they were his *alter egos* "would result in the inclusion in his bankruptcy estate of substantial assets which then would be available to satisfy, at least in part, his creditors' claims."); *Green v. Bate Recs., Inc. (In re 10th Ave. Rec. Distribs., Inc.)*, 97 B.R. 163, 166 (S.D.N.Y. 1989) (holding trustee had standing to bring *alter ego* claim because it was "an attempt to collect property of the estate for the benefit of *all* creditors and is not personal to any particular creditor") (emphasis in original).

\* \* \*

For the reasons stated above, the Court concludes a bankruptcy trustee may seek to avoid transfers by a debtor through an *alter ego* of the debtor or an entity beneficially owned by the debtor of property nominally owned by the *alter ego* or beneficially owned by the debtor.[16] Therefore, the Trustee has plausibly pled the Individual Debtor transferred his property or property of the estate.

The Court's determinations regarding the Trustee's beneficial ownership allegations, which Apple did not contest, are sufficient to support this conclusion.  Nevertheless, the Court has also reached the above conclusion regarding the interaction of *alter ego* and the Bankruptcy Code's avoidance provisions.  It is not a novel conclusion.  *ASARCO LLC v. Ams. Mining Corp.*, 382 B.R. 49, 66–68 (S.D. Tex. 2007) (applying Delaware *alter ego* law); *see Parker v. Titan Mining (US) Corp. (In re Star Mountain Res., Inc.)*, Case No.: 2:18-bk-01594-DPC, Adversary No.: 2:19-ap-00412-DPC, 2020 WL 6821721, at *4–6 (Bankr. D. Ariz. Sept. 30, 2020) (applying Nevada *alter ego* law); *Searcy v. Knight (In re Am. Int'l Refinery)*, 402 B.R. 728, 743–48 (Bankr. W.D. La. 2008) (same); *Kendall v. Turner (In re Turner)*, 335 B.R. 140, 145–47 (Bankr. N.D.

---

[16] Accordingly, the Court concludes the Trustee is not required to seek *nunc pro tunc* substantive consolidation.  While the results of *alter ego* in a bankruptcy proceeding may be similar to those of substantive consolidation, it is a distinct doctrine with distinct elements.  *See In re Owens Corning*, 419 F.3d 195, 205–06 (3d Cir. 2005) ("Prior to substantive consolidation, other remedies for corporate disregard were (and remain) in place.  For example, where a subsidiary is so dominated by its corporate parent as to be the parent's 'alter ego,' the 'corporate veil' of the subsidiary can be ignored (or 'pierced') under state law."); *Parker v. Titan Mining (US) Corp. (In re Star Mountain Res., Inc.)*, Case No.: 2:18-bk-01594-DPC, Adversary No.: 2:19-ap-00412-DPC, 2022 WL 2294175, at *8 (Bankr. D. Ariz. June 22, 2022) ("Substantive consolidation is better thought of as an economic remedy, the primary goal being the equitable treatment of all creditors.  Conversely, a state law alter ego claim is an equitable remedy focused on preventing 'fraud or injustice.'").  Moreover, *alter ego* does not seek *nunc pro tunc* relief – *alter ego* seeks a remedy based on existing facts, just as a breach of contract claim seeks a remedy on existing facts.  *See Reid v. Wolf (In re Wolf)*, 644 B.R. 725, 749 n. 9 (N.D. Ill. 2022) (rejecting "confusing" argument that an *alter ego* determination would be impermissibly retroactive in a bankruptcy case).

Cal. 2005) (applying California *alter ego* law), *upheld in pertinent part on reconsideration* 345 B.R. 674, 676–77 (Bankr. N.D. Cal. 2006) (upholding *alter ego* determination).

In coming to its conclusion, the Court respectfully disagrees with Apple's argument that the decision of the United States Court of Appeals for the Sixth Circuit in *Spradlin v. Beads & Steeds Inns, LLC (In re Howland)*, 674 F. App'x 482 (6th Cir. 2017), should control in this adversary proceeding.  In *Howland*, the Sixth Circuit held property of an *alter ego* is not property of the estate and cannot be recovered when transferred where, at state law, *alter ego* merely imposes vicarious liability.  674 F. App'x at 487; *accord Lippe v. Bairnco Corp.*, 230 B.R. 906, 914–15 (S.D.N.Y. 1999); *Grimmett v. McCloskey (In re Wardle)*, BAP No. NV-05-1000-KMB, Bankruptcy No. S-01-21542-BAM, Adversary No. S-03-01467, 2006 WL 6811026 (B.A.P. 9th Cir. Jan. 31, 2006); *Stevenson v. William Noble Rare Jewels L.P. (In re DuMouchelle)*, 667 B.R. 122 (Bankr. E.D. Mich. 2023) (applying *Howland*); *Evangelista v. Silver (In re Silver)*, 647 B.R. 897 (Bankr. E.D. Mich. 2022) (same).[17]

The Court is not persuaded by *Howland* for several reasons in addition to the analysis above.  First, the Sixth Circuit's approach to *alter ego* claims in avoidance actions is contrary to the Second Circuit's directive that courts must consider the substance, rather than the form, of a fraudulent transfer.  *See Orr*, 991 F.2d at 35; *see also Boyer v. Crown Stock Dist., Inc.*, 587 F.3d 787, 792 (7th Cir. 2009); *Voest-Alpine*, 919 F.2d at 211–12.  There is capacity in fraudulent transfer law to look past the nominal parties to a transaction where state law allows the corporate form to be disregarded.  *McNellis*, 420 F.2d at 53; *ASARCO*, 382 B.R. at 65–68.  This capacity to

---

[17] While *Silver* and *DuMouchelle* applied *Howland*, it was not selected for publication and is not binding on the Sixth Circuit.  6 Cir. R. 32.1(b).

recognize economic reality is reflected in the expansive definitions of transfer and property of the estate in the Bankruptcy Code.  11 U.S.C. §§ 101(54)(D), 541.

Second, *Howland* is also contrary to how *alter ego* and avoidance claims interact under state law.  Avoidable transfer and *alter ego* law both seek to thwart judgment evasion and can, unsurprisingly, be used together in collection actions outside of bankruptcy.  As outlined above, *alter ego* can be used in NYUVTA and NYUFCA claims outside of bankruptcy to target transactions where the *alter ego* is both the nominal transferor and the nominal owner of the transferred property.  *Bravia Cap.*, 2025 WL 552046, at *9; *Technostroyexport*, 295 F. Supp. 2d at 379–80.  This is not only the law in New York; it is the law of most – and perhaps all – jurisdictions within the United States.  The Uniform Fraudulent Transfer Act ("UFTA") – which was promulgated after the Uniform Fraudulent Conveyance Act ("UFCA") and before the Uniform Voidable Transactions Act ("UVTA") – has the same definition of debtor as NYUVTA and, hence, an *alter ego* is a debtor under UFTA.  *See, e.g.*, CONN. GEN. STAT. § 52-552b (6) (Connecticut has adopted the UFTA).  The UFCA, UFTA, or UVTA is effective in forty-seven (47) states and the District of Columbia.  5 COLLIER ON BANKRUPTCY ¶ 544.06[2]; *see, e.g.*, *Magliarditi v. TransFirst Grp., Inc.*, 450 P.3d 911, 2019 WL 5390470, at *4–5 (Nev. 2019) (table disposition); *Thompson Props. v. Birmingham Hide & Tallow Co., Inc.*, 839 So. 2d 629, 633–34 (Ala. 2002); *Spring Real Est., LLC v. Echo/RT Holdings, LLC*, C.A. No. 7994-VCN, 2016 WL 769586, at *3 (Del. Ch. Feb. 18, 2016); *Dwyer v. Meramec Venture Assocs., L.L.C.*, 75 S.W.3d 291, 294–95 (Mo. Ct. App. 2002); *U.S. Cap. Funding VI, Ltd. v. Patterson Bankshares, Inc.*, 137 F. Supp. 3d 1340, 1367–68 (S.D. Ga. 2015).  Moreover, this is longstanding law: UFCA – the oldest of the three uniform acts – is more than one hundred years old.

The result should be no different in bankruptcy.  To the extent bankruptcy is a creditor process, it is a collective collection proceeding.  *Merit Mgmt. Grp.*, 583 U.S. at 370–71.  This is *why* the Trustee has standing to assert (i) general claims for the benefit of creditors at large, 11 U.S.C. § 544(a); *see Nordlicht*, 115 F.4th at 105; and (ii) particular avoidance claims of actual creditors, 11 U.S.C. § 544(b), to the full extent of the transfer – even if the actual creditors' debt is less than the transferred amount, *Moore*, 284 U.S. at 5.  Bankruptcy "shields creditors from one another by replacing 'race' and other preferential systems of debt collection with a more equitable and orderly distribution of assets."  *In re Alyucan Interstate Corp.*, 12 B.R. 803, 806 (Bankr. D. Utah 1981) (discussing purpose of the automatic stay) (citing *Fidelity Mortg. Invs. v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir. 1976) (case under the former Bankruptcy Act of 1898, as amended)).  It would undermine the collective nature of bankruptcy to send creditors on a race to the courthouse to pursue *alter ego* and fraudulent transfer remedies – remedies they may have no standing to pursue during the pendency of the Individual Debtor's bankruptcy.  *See St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 704–05 (2d Cir. 1989).

Even if creditors *could* bring these actions outside of bankruptcy, the costs to do so would be high: the Trustee's investigation into the Individual Debtor's financial affairs has been highly litigated and time consuming.  Forcing creditors to pursue these avoidance actions outside of bankruptcy or forego their prosecution would promote an inequitable and uneven recovery for the Individual Debtor's creditors, many of whom likely could not pay the fees and costs associated with such an effort.  *See Union Bank v. Wolas*, 502 U.S. 151, 160–61 (1991) (section 547 is designed to balance related goals of preventing a race to the courthouse and providing for an equitable distribution to all creditors); *Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 40–41 (2d Cir. 1996) (same).  The Trustee is the person to pool the creditors' interests

in the estate and bring the avoidance actions for their collective benefit.  11 U.S.C. §§ 323, 541–50.

Third and finally, *Howland* is contrary to Delaware and New York *alter ego* law.[18]  It is an accident of our legal system that, generally, *alter ego* results in vicarious liability – the *alter ego* doctrine is about disregarding the corporate form where it is abused and causes fraud or injustice.  *See Cortlandt St. Recovery Corp. v. Bonderman*, 96 N.E.3d 191, 203 (N.Y. 2018) ("[C]ourts will disregard the corporate form . . . whenever necessary 'to prevent fraud or achieve equity' . . ..") (quoting *Morris v. Dep't of Tax'n*, 623 N.E.2d 1157, 1160 (N.Y. 1993)); *Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968) ("There is, of course, no doubt that upon a proper showing corporate entities as between parent and subsidiary may be disregarded and the ultimate party in interest, the parent, be regarded in law and fact as the sole party in a particular transaction.").  As the Delaware Court of Chancery observed "[a]t its most basic level, reverse veil-piercing involves the imposition of liability on a business organization for the liabilities of its owners", *Manichaean Cap.*, 251 A.3d at 710 (action to collect on appraisal judgment), *because* "where the subsidiary is a mere alter ego of the parent . . . the Court [will] treat the assets of the subsidiary as those of the parent", *id.* (alteration in original).

Most relief in the common law takes the form of money damages.  The primary use of an *alter ego* claim is to spread liability from a defendant liable at law for money damages on, *e.g.*, tort or contract to a defendant with deeper pockets.  *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) ("Nonetheless, in appropriate circumstances, the distinction between the entity and its owner 'may be disregarded' to require an owner to answer

---

[18]  Delaware or New York law applies to the relevant *alter ego* claims.  *See* n. 13, *supra*.

for the entity's debts.") (action on contract); *Wilson v. Thorn Energy, LLC*, 787 F. Supp. 2d 286, 294 (S.D.N.Y. 2011) ("A plaintiff seeking to hold the owners of a corporation liable for the corporation's debts 'faces a difficult task.'") (action on fraud); *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 549 B.R. 21, 43–44 (Bankr. S.D.N.Y. 2016) ("Under Delaware law, veil piercing is a doctrine of equity. . . . Veil piercing is thus not a purely independent cause of action.  Instead, piercing the corporate veil *effectively* amounts to the imposition of joint and several liability between a direct actor and its corporate affiliate for some underlying wrong committed by the direct actor.") (action on tort) (emphasis added); *but see, e.g.*, *Freeman v. Complex Computing Co., Inc.*, 979 F. Supp. 257, 262 (S.D.N.Y. 1997) (applying New York law) (piercing corporate veil and concluding principal was required to arbitrate action pursuant to arbitration agreement entered into by corporate *alter ego*), *on remand from* 119 F.3d 1044 (2d Cir. 1997).

However, the avoidance of a transfer is not money damages.  "[T]he purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate".  *Begier*, 496 U.S. at 59 (discussing section 547 and the avoidance of preferential transfers); *see In re PWS Holding Corp.*, 303 F.3d 308, 313 (3d Cir. 2002) ("Fraudulent conveyance law aims 'to make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they have been transferred away.'"); *Sapir v. C.P.Q. Colorchrome Corp. (In re Photo Promotion Assocs., Inc.)*, 881 F.2d 6, 9–10 (2d Cir. 1989) (holding that allowing an administrative claim holder to keep unauthorized post-petition transfers would be inequitable to other creditors who have similar claims).  To this end, the relief provided by sections 548 and 549 of the Bankruptcy Code, sections 273 and 274 of NYUVTA, and sections 273, 275, and 276 of NYUFCA is *avoidance* of the subject transfer – not money damages.  11 U.S.C. §§ 548, 549;

NYUVTA, N.Y. DEBT. & CRED. LAW §§ 273–74 (effective April 4, 2020); NYUFCA, N.Y.

DEBT. & CRED. LAW §§ 273, 275–76 (effective as to claims arising prior to April 4, 2020).

Upon avoidance of the transfer, section 550(a) of the Bankruptcy Code, section 276(b) of

NYUVTA, and section 278 of NYUFCA allow recovery of the *specific property* transferred, the

value thereof, or the proceeds thereof. 11 U.S.C. § 550(a); NYUVTA, N.Y. DEBT. & CRED. LAW

§ 276(b) (effective April 4, 2020); NYUFCA, N.Y. DEBT. & CRED. LAW § 278 (effective as to

claims arising prior to April 4, 2020). It is, therefore, entirely unsurprising that disregarding the

corporate form and treating the assets of the *alter ego* as the assets of the debtor operates

differently with regard to avoidance actions than it does with regard to other actions. *See*

*Manichaean Cap.*, 251 A.3d at 710 ("In the parent/subsidiary context, 'where the subsidiary is a

mere alter ego of the parent . . . the Court [will] treat the assets of the subsidiary as those of the

parent.'").

"Delaware will not countenance the use of the corporate form as a means to facilitate

fraud or injustice", *Manichaean Cap.*, 251 A.3d at 714, and New York "will disregard the

corporate form . . . whenever necessary 'to prevent fraud or achieve equity'", *Bonderman*, 96

N.E.3d at 203. Fraudulent and unauthorized post-petition transfer law align with this purpose.

They exist to prevent inequitable results arising from the dissipation of assets. *See Begier*, 496

U.S. at 59; *PWS Holding Corp.*, 303 F.3d at 313; *Photo Promotion Assocs.*, 881 F.2d at 9–10. It

would be fundamentally absurd and contrary to the purpose of the doctrine, if *alter ego* could not

be used to prevent fraud or injustice resulting from a fraudulent or unauthorized post-petition

transfer. These two bodies of law can be used together. *McNellis*, 420 F.2d at 53; *ASARCO*, 382

B.R. at 65–68; *see Bravia Cap.*, 2025 WL 552046, at *9; *Technostroyexport*, 295 F. Supp. 2d at

379–80; *see also Spring Real Est.*, 2016 WL 769586, at *3.

### 3.    First and Second Claims: Fraudulent Intent

The Court turns next to Apple's argument that the Trustee has failed to plead the transferor's fraudulent intent with particularity.  Apple asserts that the transferors at issue are the alleged shell companies – not the Individual Debtor – and, in any event, the Trustee has not adequately pled the Individual Debtor's fraudulent intent as to each individual transfer.  In response, the Trustee argues the Individual Debtor is the transferor and the amended complaint alleges several badges of fraud with requisite particularity, including the Individual Debtor's overall course of conduct intended to hinder, delay, or defraud his creditors.

As stated above, the Individual Debtor – not his alleged shell companies – is the alleged transferor.  (Proposed Amended Complaint ¶¶ 2, 4.)  Hence, the Court will analyze the amended complaint regarding the Individual Debtor's fraudulent intent.  11 U.S.C. § 548(a)(1)(A); NYUVTA, N.Y. DEBT. & CRED. LAW § 274(a)(1) (effective April 4, 2020); NYUFCA, N.Y. DEBT. & CRED. LAW § 276 (effective as to claims arising prior to April 4, 2020).  Because "[f]raudulent intent is rarely susceptible to direct proof . . . courts have developed 'badges of fraud' to establish the requisite actual intent to defraud." *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir. 1983) (internal citations omitted).  Badges of fraud may include, among other things:

> (1)    the lack or inadequacy of consideration;

> (2)    the family, friendship or close associate relationship between the parties;

> (3)    the retention of possession, benefit or use of the property in question;

> (4)    the financial condition of the party sought to be charged both before and after the transaction in question;

> (5)    the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6)    the general chronology of the events and transactions under inquiry.

*Kaiser*, 722 F.2d at 1582–83.

Unlike in *Geron v. Central Park Realty Holding Corp. (In re Nanobeak Biotech Inc.)*, wherein the bankruptcy trustee failed to allege badges of fraud, the Court concludes the Trustee has alleged several badges of fraud with requisite particularity.  656 B.R. 350, 367–68 (Bankr. S.D.N.Y. 2024) (granting motion to dismiss actual fraudulent transfer claim without prejudice because unalleged badges of fraud were present).  The Trustee has alleged (a) lack of consideration, in that others, namely, the subsequent transferee defendants in this adversary proceeding, received value for the transfers – not the Individual Debtor (Proposed Amended Complaint ¶¶ 45–48); (b) a close familial, associational, and employment relationships between the Individual Debtor and the subsequent transferee defendants (*id.*); (c) the Individual Debtor's lack of capitalization and inability to make payments to creditors, *e.g.*, Pacific Alliance Asia Opportunity Fund, L.P. ("PAX"), as they came due both before and after the transfers (*id.* ¶¶ 18, 31, 33); and (d) a pattern of transactions designed to leave the Individual Debtor judgment proof while he provided for an expensive lifestyle for himself and his family and renumerated and rewarded his associates and employees (*id.* ¶¶ 20–37, 41–48).  Hence, the Trustee has alleged five out of six of the badges of fraud set forth in *Kaiser*.  The Court concludes the Trustee has pled fraudulent intent with the requisite particularity.  *See Eight-115 Assocs., LLC*, 650 B.R. at 56.

### 4.    Third and Fourth Claims: Insolvency and Receipt of Less than Reasonably Equivalent Value

The Court turns next to Apple's arguments that the Trustee has made only conclusory allegations regarding the Individual Debtor's insolvency and receipt of less than reasonably equivalent value.  Apple asserts, insofar as the Court holds that property of *alter egos* is property

of the estate, the Court must consider all assets held by *alter egos* as part of an insolvency analysis.  In response, the Trustee argues he has made sufficient allegations to support a reasonable inference that the Individual Debtor was insolvent, including that he was not paying PAX as his obligations came due and that the transfers were made without consideration because third parties, *i.e.*, the other defendants in this adversary proceeding, received value in exchange for the transfers.  On the basis of the latter allegation, the Trustee argues he has also plausibly pled the Individual Debtor received less than reasonably equivalent value in exchange for the transfers.

The Court agrees with the Trustee.  The Trustee has alleged "sufficient facts to permit a plausible inference of insolvency."  *Halperin v. Morgan Stanley Inv. Mgmt. (In re Tops Holding II Corp.)*, 646 B.R. 617, 658 (Bankr. S.D.N.Y. 2022).  The amended complaint alleges a gaping disparity between the Individual Debtor's assets and liabilities at the time of the commencement of his bankruptcy case (Proposed Amended Complaint ¶¶ 18, 33) and this disparity was intentionally created by the Individual Debtor's alleged long-running shell game (*id.* ¶¶ 20, 32). The amended complaint also alleges an example of creditor frustration, wherein the Individual Debtor failed to pay PAX as his obligations came due and since 2017 has been involved in litigation with PAX, including with respect to alleged dissipation of assets.  (*Id.* ¶ 31.)

The Trustee's *alter ego* and beneficial ownership allegations do not contradict or render implausible the foregoing allegations.  *See Tops Holding II*, 646 B.R. at 658.  Contrary to Apple's argument, there is no reason to surmise from the allegations that, were every asset the Individual Debtor has allegedly held away from creditors listed as his assets, the Individual Debtor would have been solvent at the time of the transfers.  Furthermore, the Court concludes it would be illogical and contrary to equity to use *alter ego* – an equitable doctrine designed to thwart asset

dissipation – to defeat avoidance of a fraudulent transfer, a body of law also designed to prevent asset dissipation. Both Delaware law and New York law require that *alter ego* be used to *prevent* fraud or injustice – not to bless fraud or injustice as Apple would have it. *See, e.g.*, *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999); *MAG Portfolio Consult, GmbH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (applying New York law).

Regarding receipt of reasonably equivalent value, the amended complaint alleges the Individual Debtor received *no* value for the transfers – it alleges the subsequent transferee defendants received value instead. (Proposed Amended Complaint ¶¶ 45–48.) Hence, the Trustee has plausibly alleged the Individual Debtor did not receive reasonably equivalent value in exchange for the transferred amounts.

### 5.    Sealing

Finally, the Court turns to Apple's argument that the Trustee has failed to put Apple on notice of the claims against it because he has filed the transfer information under seal. Apple asserts it does not matter that the Trustee did so pursuant to the Court's order – the Trustee should have sought relief from the order if he wanted to sue Apple. The Trustee argues Apple should either sign the protective order to receive the transfer information or file a motion to unseal it, which motion the Trustee would not oppose so long as it were on notice to the parties that produced the relevant information to the Trustee and deemed such information confidential or highly confidential under the protective order.

The Court agrees with the Trustee. The Trustee filed transfer information under seal in compliance with this Court's order because that information was produced to him as confidential or highly confidential under the applicable protective order. (Avoidance Action Procedures

Order ¶ 2(d), Main Case ECF No. 3163.)  The Court concludes the Trustee's compliance with this Court's order provides no basis to dismiss the complaint.  Apple may move to unseal the schedule of transfers.

## V.    CONCLUSION AND ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED:**  The Motion to Amend is **GRANTED**.  On or before August 8, 2025, the Trustee shall file his amended complaint, which shall be substantially in the form of the proposed amended complaint but shall clarify which G Fashion entity is at issue as discussed in footnote seven above; and it is further

**ORDERED:**  The Motion to Dismiss is **DENIED IN PART** as applied to the amended complaint.  Notwithstanding the foregoing, this decision shall not apply to Stayed or Partially Stayed Avoidance Claims, as those terms are defined in paragraphs 2(e)(i) and (ii) of the Avoidance Action Procedures Order (Main Case ECF No. 3163), insofar as those avoidance claims are stayed; and it is further

**ORDERED:**  The Trustee and Apple shall meet and confer regarding a date for Apple to file an answer to the amended complaint.

Dated at Bridgeport, Connecticut this 29th day of July, 2025.



*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut